**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**1:21-cv-121-MOC**
**(1:18-cr-66-MOC-WCM-4)**

| | | |
|---|---|---|
| **LONNIE ALTON HENDERSON,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **REDACTED ORDER** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| | ) | |

**THIS MATTER** is before the Court on Petitioner's Amended Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 3).

## I. BACKGROUND

Petitioner was charged with: conspiracy to possess with intent to distribute 50 grams or more of methamphetamine, 100 grams or more of heroin, and marijuana in violation of 21 U.S.C. §§ 846 and 841(a)(1) (Count One); possession with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1) (Count Three); and possession of a firearm in furtherance of a drug trafficking crime, *i.e.*, possession with intent to distribute a quantity of methamphetamine, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Four). (1:18-cr-66 ("CR") Doc. No. 15).

Petitioner agreed to plead guilty to Counts Three and Four in exchange for the Government's dismissal of Count One. The parties entered into a written Plea Agreement in which Petitioner admitted his guilt of those offenses. (CR Doc. No. 91 at ¶ 1). The Plea Agreement sets forth Petitioner's sentencing exposure of a minimum term of 10 years' imprisonment and a maximum term of life for Count Three, and a minimum term of five years' imprisonment,

consecutive, and a maximum of life for Count Four. (Id. at ¶ 5). The Plea Agreement states that Petitioner was aware that the Court would consider the U.S. Sentencing Guidelines in determining the sentence, the sentence had not yet been determined, any estimate of the likely sentence was a prediction rather than a promise, the Court would have the final discretion to impose any sentence up to the statutory maximum, the Court was not bound by any recommendations or agreements by the United States, and Petitioner may not withdraw the plea as a result of the sentence imposed. (Id. at ¶ 7). The parties agreed to jointly recommend that the amount of actual methamphetamine that was known to or reasonably foreseeable by Petitioner was at least 50 grams but less than 150 grams, and the plea is timely for purposes of acceptance of responsibility. (Id. at ¶ 8). The parties remained free to argue their respective positions regarding any other specific offense characteristics, cross-references, special instructions, enhancements, departures, and adjustments to the offense level, and to seek a departure or variance from the applicable guideline range. (Id.). The Plea Agreement sets forth the rights Petitioner was waiving by pleading guilty including the right to be tried by a jury, to be assisted by an attorney at trial, to confront and cross-examine witnesses, and not to be compelled to incriminate himself. (Id. at ¶ 15). The Plea Agreement contains an express waiver of Petitioner's appellate and post-conviction rights except for claims of ineffective assistance of counsel or prosecutorial misconduct. (Id. at ¶¶ 16, 17).

[redacted]

[redacted]

The Plea Agreement provides that Petitioner stipulated to the existence of a factual basis for the guilty plea, that he read and understood the Factual Basis attached to the Plea Agreement, and that such Factual Basis could be used by the Court and U.S. Probation Office without objection for any purpose, including to determine the applicable guideline range or sentence. (Id. at ¶ 11).

The Factual Basis provides that:

> [On January 25, 2018, during a traffic stop of a vehicle in which Petitioner was a passenger,] the K-9 alerted on the vehicle, and officers searched the vehicle. Inside, officers located approximately **702 grams of methamphetamine**. Officers also discovered a **Glock 42 .380 caliber handgun** in a pocketbook that belonged to … the driver. HENDERSON then exclaimed that he could explain about the methamphetamine and the handgun….
>
> … [At] the hotel where [a co-Defendant] and HENDERSON had obtained the methamphetamine … agents … seized large quantities of methamphetamine, currency, and other drugs…. A later laboratory test on the methamphetamine seized at the hotel – which was the source of the methamphetamine seized from HENDERSON … – showed that it was approximately 100 percent pure.
>
> On January 30, 2018, ACSO Det. Lee listened to HENDERSON's recorded jail calls. During one conversation, HENDERSON confirmed that the methamphetamine seized at the stop was his. On February 6, 2018, Det. Lee obtained a search warrant for HENDERSON's cell phone. On it, Det. Lee discovered multiple conversations about buying/selling methamphetamine between HENDERSON and [a co-Defendant], as well as between HENDERSON and his own distribution clients. HENDERON's phone also contained multiple text conversations about selling/trading firearms for methamphetamine.
>
> **HENDERSON admits that he possessed the quantity of methamphetamine seized from the traffic stop with the intent to distribute it**. The parties agree that the quantity of methamphetamine seized from the traffic stop was approximately 100 percent pure, and the parties also agree that, while

substantial additional quantities of methamphetamine were seized from VEGA and RUSSELL at the hotel in Asheville, those quantities are not attributable to HENDERSON, who purchased from the conspiracy to support his own distribution activities, rather than distributing as an integral part of the conspiracy.

> **HENDERSON admits that he possessed the Glock in furtherance of and during and in relation to his drug trafficking offense**, in that he possessed the firearm for protection of his enterprise and as a potential item of value for use in methamphetamine transactions.

(CR Doc. No. 92 at 1-3) (paragraph numbers omitted; emphasis added).

A Rule 11 hearing came before Magistrate Judge W. Carleton Metcalf on February 11, 2019. (CR Doc. No. 163). Petitioner stated under oath that he understood the charges against him and the consequences of his guilty plea including the maximum and minimum penalties he faced. (Id. at 5-11). Petitioner confirmed that he spoke to counsel about how the U.S. Sentencing Guidelines may apply to his case, that the sentence had not yet been determined and the guidelines have not yet been calculated, and that he may receive a sentenced higher or lower than called for by the guidelines. (Id. at 12-13). Petitioner acknowledged the rights he was waiving by pleading guilty including the right to be represented by a lawyer, the presumption of innocence, the right to not testify at trial, and the Government's burden of proof. (Id. at 14-15). Petitioner admitted his guilt of the offense charged in Counts Three and Four. (Id. at 15). The prosecutor summarized the terms of the Plea Agreement in open court, including Petitioner's appellate and post-conviction waivers. (Id. at 15-17). Petitioner stated that he understood the Plea Agreement and confirmed that he was pleading guilty without any threats, intimidation, or promises of leniency or a light sentence in exchange for the plea. (Id. at 18-20). Petitioner further stated that he read and understood the Factual Basis, that it is accurate, and that the Government would be able to prove everything in it beyond a reasonable doubt if the case were to proceed to trial. (Id. at 18-19). Petitioner agreed that he had enough time to discuss with his lawyer any possible defenses he may have to the charge

and that he was satisfied with the services of his attorney. (Id. at 20).

A draft Presentence Investigation Report (PSR) was filed on April 8, 2019. (CR Doc. No. 101). On April 23, 2019, Mr. Bensen filed a Motion for Psychological Evaluation pursuant to which Petitioner was committed on June 24, 2019. (CR Doc. Nos. 105, 106). Petitioner was found competent to proceed on October 2, 2019. (CR Doc. No. 118). However, some of Petitioner's statements in in the competency proceeding were inconsistent with the Factual Basis in support of his guilty plea, so the Court scheduled a status conference to address whether Petitioner's plea should be vacated, and whether new counsel should be appointed. See (CR Doc. No. 123). At a status conference on October 16, 2019, Mr. Bensen indicated that Petitioner would not be challenging the acceptance of the guilty plea, and Petitioner did not request that Bensen's representation be discontinued. (CR Doc. Nos. 126, 127). No objections to the PSR were filed. See (CR Doc. No. 128) (Response filed by Mr. Bensen indicating that there are no PSR objections that would affect the proposed guideline range).

The final PSR calculated the base offense level for Count Three as 30 because the offense involved at least 50 grams but less than 150 grams of methamphetamine. (CR Doc. 129 at ¶ 14). Three levels were deducted for acceptance of responsibility based on Petitioner's statement to the probation officer that: "I admit I am guilty of having meth in my car. I was messed up on meth really bad and did not know how to get the help I needed. I apologize for my wrong doings. I need one more chance to prove myself. Thank you." (Id. at ¶¶ 12, 21-22). The resulting offense level for Count Three was 27. (Id. at 23). Petitioner had nine criminal history points and a criminal history category of IV. (Id. at ¶¶ 84-85). This resulted in an advisory range for Count Three of between 100 and 125 months' imprisonment, however, the minimum mandatory sentence for that offense is 10 years' imprisonment, so the advisory range is 120 to 125 months' imprisonment, plus

a mandatory consecutive five-year term for Count Four. (Id. at ¶¶ 176-77).

Mr. Bensen moved to withdraw for a second time on February 21, 2020, and he was allowed to do so at a hearing on February 25, 2020. (CR Doc. Nos. 139, 140, 141). Meghann Burke was appointed to represent Petitioner on March 2, 2020. (CR Doc. No. 141).

The sentencing hearing came before the Court on April 22, 2020. (CR Doc. No. 164). Petitioner stated that he recalled the Rule 11 hearing, that he told the truth in the hearing, and that he would answer the questions the same way if he were asked again. (Id. at 2-3). Ms. Burke stated that, although she was not present at the Rule 11 hearing, she believed that Petitioner fully understood the plea. (Id. at 3). Petitioner stated that he pleaded guilty because he committed those offenses. (Id.). The Court affirmed Judge Metcalf's finding that Petitioner's plea was knowing and voluntary, and that Petitioner understood the charges, potential penalties, and consequences of the plea. (Id. at 3-4). The defense stipulated that the Court could use the offense conduct set forth in the PSR to form a factual basis. (Id. at 4). Petitioner admitted that he reviewed the PSR with Mr. Bensen as well as Ms. Burke, and that he understood it, as well as the sentence to be imposed. (Id. at 5). The parties agreed that there were no objections to the PSR and that the applicable advisory guideline range is 120 to 125 months' imprisonment. (Id. at 6). [redacted]

The Court adopted the PSR's sentencing calculation including the advisory guideline range of 120 to 125 months' imprisonment, plus five years, consecutive, for the § 924(c) offense. (Id. at 6).

[redacted] The Court sentenced Petitioner to the statutory minimum mandatory sentence of 120 months' imprisonment for Count Three plus 60 months, consecutive, for Count Four. (Id. at 16). The Court informed Petitioner at the end of the hearing that "[a]ny appeal must be done in writing and must be done within 14 calendar days from when [the Court] enter[s] the written judgment in this case" and that, if he could not afford to appeal, he may do so at the Government's expense. (Id. at 21). Petitioner indicated that he understood. (Id.). The Judgment was entered April 28, 2020. (CR Doc. No. 150). Petitioner did not appeal.

Petitioner filed a pro se § 2255 Motion to Vacate in the instant case on April 19, 2021.[1] (Doc. No. 1). It was insufficient to proceed and the Petitioner was granted the opportunity to amend. (Doc. No. 2). Petitioner filed the Amended § 2255 Motion to Vacate on May 12, 2021.[2] (Doc. No. 3). He appears to argue that counsel was ineffective for (renumbered and restated): (1) failing to file a notice of appeal pursuant to Petitioner's timely request; and (2) promising that he would receive a 90-month sentence and for failing to move to withdraw the plea, file a suppression motion, and hold the Government to its sentencing promise, all of which rendered the guilty plea involuntary. (Doc. No. 3). He asks the Court to "vacate and remand for further proceedings,"[3] grant an evidentiary hearing, and appoint him conflict-free counsel. (Doc. No. 3 at 13).

[1] The docketing date is used here because Petitioner did not certify the date on which he placed the Motion to Vacate in the prison mail system.

[2] Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Rule 3(d), 28 U.S.C.A. foll. § 2255 (addressing inmate filings).

[3] Petitioner appears to seek only the vacatur of his sentence, and not the withdrawal of his guilty plea. See (Doc. No. 3-1 at 4) (asking the Court to "vacate his sentence ….").

The Government conceded that an evidentiary hearing should be held solely on the claim that counsel was ineffective for failing to file a notice of appeal, and filed a Response arguing that the Petitioner's other claims should be dismissed. (Doc. No. 8). The Court scheduled an evidentiary hearing solely on the issue of whether counsel was ineffective for failing to file a notice of appeal, and appointed counsel to represent Petitioner at the hearing.[4] See 28 U.S.C. § 2255(b) ("Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall ... grant a prompt hearing thereon, determine the issues, and make findings of fact and conclusions of law with respect thereto."); United States v. Witherspoon, 231 F.3d 923, 925–27 (4th Cir. 2000) (a hearing is required when a movant presents a colorable Sixth Amendment claim showing disputed material facts and a credibility determination is necessary in order to resolve the issue).

## II. EVIDENTIARY HEARING

The Court conducted an evidentiary hearing on the notice of appeal issue on March 23, 2022. Petitioner testified on his own behalf and he called as witnesses Joyce Laws and Cheryl Benge, mother-and-daughter family friends of Petitioner's. The United States called Ms. Burke, Petitioner's former counsel, as its sole witness.

Petitioner testified that he decided that he wanted to appeal the day after sentencing. He unsuccessfully attempted to contact Ms. Burke on the phone with this request, but was only able to reach Ms. Burke's secretary. He also sent Ms. Burke a letter, which received no response. Petitioner flatly denied speaking to Ms. Burke during the 14-day appeal period. Petitioner enlisted the assistance of Ms. Laws to help him contact Ms. Burke about filing an appeal in multiple phone

---

[4] S. Frederick Winiker, III was appointed to represent Petitioner for purposes of the § 2255 evidentiary hearing.

calls and three letters. Ms. Laws testified that she phoned Ms. Burke's office on numerous occasions during the 14-day appeal widow, and the calls either did not connect or were answered by Ms. Burke's secretary and/or sister. Ms. Benge testified that she listened in on these phone calls via speakerphone. Ms. Laws testified that, by the time she finally reached Ms. Burke on the phone, the 14-day period for appealing had expired and Ms. Burke said that she was finished with the representation. Ms. Laws did not present any phone records of her purported phone calls to Ms. Burke, and the three letters that Petitioner ostensibly wrote to Laws about wanting to appeal were stolen from Laws' car.

By contrast, Ms. Burke testified that she met with Petitioner five days after sentencing via videoconference on April 27, 2020. A that time, she explained Petitioner's appellate rights and Petitioner definitively said that he did not want to appeal. The Government has supported Ms. Burke's testimony with a Visitation Activity Report from the Mecklenburg County Sheriff's Office, indicating that Ms. Burke scheduled and conducted a video visit with Petitioner on April 27, 2020 at 10:30 AM. (Doc. 24-1). Ms. Burke further testified that she mailed Petitioner a letter within the appeal period enclosing his Judgment, to which she received no response. She testified that neither Petitioner, Ms. Laws, Ms. Benge, or anyone else ever asked her to file a notice of appeal on Petitioner's behalf, and that she has neither a secretary nor a sister. Moreover, Ms. Burke testified that she routinely files notices of appeal for her clients if they request that she do so. She would have filed a notice of appeal for Petitioner had he made such a request, even if she did not think that appealing was in his best interest or that no non-frivolous appeal grounds existed. The first time that Ms. Burke learned that Petitioner was asserting that he wanted her to file a notice of appeal was when he filed the instant § 2255 action.

The Court does not find the testimony of Petitioner, Ms. Laws, or Ms. Benge to be credible

and rejects it. Furthermore, the Court finds that the testimony of Ms. Burke, an experienced and ethical defense lawyer, was entirely credible. Ms. Burke's testimony that she spoke to Petitioner within the 14-day appeal period is also supported by the Visitation Activity Report, and the record in the criminal case. See (CR Doc. No. 152) (Government's May 4, 2020 Motion for Transfer of Custody indicating that defense counsel had discussed the Motion with Petitioner). Petitioner's present self-serving contentions that he had no contact with Ms. Burke after sentencing, and that he wanted to appeal but was unable to reach her, are rejected. In sum, the Court accepts Ms. Burke's testimony that she discussed a potential appeal with Petitioner after sentencing and before the time to file a notice of appeal had expired, that Petitioner unequivocally stated that he did not wish to appeal, and that neither Petitioner or anyone on his behalf asked her to file a notice of appeal.

## III. DISCUSSION

The Sixth Amendment entitles a criminal defendant to reasonably effective legal assistance. Strickland v. Washington, 466 U.S. 668 (1984). To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced him. Id.

### (1) Notice of Appeal

Petitioner argues that, "[a]fter sentencing and within the (14) day requirement [to appeal], Petitioner instructed Ms. Burke to file a timely appeal, which she failed to do," and that he lost his opportunity to appeal as a result. (Doc. No. 3 at 5).

The right to the effective assistance of counsel includes the right to appellate representation. Counsel must file a notice of appeal when instructed by his client to do so and, if

counsel fails to do so, prejudice is presumed and the petitioner need not show that his appellate issued had merit. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000); Garza v. Idaho, 139 S.Ct. 738 (2019) (the presumption of prejudice applies regardless of whether the defendant has signed an appeal waiver). Even if the client does not expressly request an appeal, counsel has a constitutional duty to consult with a defendant about an appeal where there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. Flores-Ortega, 528 U.S. at 480; Gordon v. Braxton, 780 F.3d 196, 200 (2015); United States v. Cooper, 617 F.3d 307, 313 (4th Cir. 2010). Dereliction of either of these duties constitutes deficient performance. Flores-Ortega, 528 U.S. at 484; Gordon, 780 F.3d at 200. A defendant establishes prejudice by demonstrating a reasonable probability that he would have filed a timely appeal "'but for' counsel's failure to file or consult." Gordon v. Braxton, 780 F.3d 196, 200 (4th Cir. 2015) (quoting Flores-Ortega, 528 U.S. at 484). Where ineffective assistance regarding an appeal has occurred, the prescribed remedy is to vacate the original judgment and enter a new judgment from which an appeal can then be taken. United States v. Peak, 992 F.2d 39, 42 (4th Cir. 1993).

Here, after considering the allegations, the record, the evidentiary hearing testimony and other evidence, and the Court's credibility determinations, the Court finds that neither Petitioner nor anyone else on his behalf instructed counsel to file a notice of appeal, and that counsel did not perform deficiently in any way with respect to a notice of appeal. As such, the Court denies the claim that counsel was ineffective for failing to file a notice of appeal.

**(2) Involuntary Plea**

Petitioner further appears to argue that counsel and the prosecutor promised that he would

receive a 90-month sentence [redacted] and counsel failed to hold the Government to its promise, move to withdraw the guilty plea, or file a suppression motion. (Doc. No. 3 at 7-8); (Doc. No. 3-1 at 1-3). Petitioner contends that he would not have pleaded guilty had he known that counsel and the Government would fail to honor the 90-month sentencing promise. (Doc. No. 3 at 8); (Doc. No. 3-1 at 3).

The right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearing, 706 F.3d 356, 363 (4th Cir. 2013). Where a defendant enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded by attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985)(quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). To satisfy Strickland's prejudice prong, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007).

Petitioner's arguments that counsel's ineffective assistance rendered his plea involuntary are conclusively refuted by the record. At the Rule 11 hearing, Petitioner affirmed, under oath and in open court, that he understood the charges, his sentencing exposure, and the rights he was relinquishing by pleading guilty. (CR Doc. No. 163 at 5-11). He further affirmed that his plea was freely and voluntarily entered and he specifically denied that anyone had forced or threatened him to plead guilty, or made any promises of leniency or a light sentence in exchange for the plea.

(Id. at 18-20). He acknowledged that he was guilty of Counts Three and Four and agreed that the Factual Basis was true and accurate and that the Government would be able to prove each of the statements in it beyond a reasonable doubt were the case to proceed to trial. (Id. at 18-19); see (CR Doc. No. 92 at 1-3) (Factual Basis). Petitioner stated that he understood his sentencing exposure of a minimum mandatory sentence of 10 years' imprisonment, up to life, for Count Three, and a mandatory consecutive 5-year sentence, up to life, for Count Four. (Id. at 8, 10). [redacted] He further acknowledged that he would not be allowed to withdraw his plea if the sentence was higher than he anticipated. (Id. at 13). At the sentencing hearing, Petitioner confirmed that his answers at the Rule 11 hearing were true, that his guilty plea was freely and voluntarily entered, and that he would answer the questions the same if he were asked the same questions again. (CR Doc. No. 164 at 2-3).

The foregoing complies with Rule 11 and demonstrates that Petitioner's guilty plea was freely and voluntarily entered with a full understanding of its nature and consequences, and that it was supported by an independent factual basis. See Fed. R. Crim. P. 11(b)(1)-(3); United States v. DeFusco, 949 F.2d 114, 116 (4th Cir. 1991). Petitioner's present self-serving and unsupported claims [redacted] are contradicted by the written Plea Agreement and his own sworn statements at the Rule 11 hearing, and are rejected. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent

presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005) (§ 2255 petitioner's sworn statements during the plea colloquy conclusively established that his plea agreement and waiver were knowing and voluntary).

Petitioner's disappointment with his sentence did not provide counsel with grounds to move to withdraw the guilty plea. Counsel cannot be deemed deficient for failing to file a frivolous motion to withdraw that would have been contrary to the terms of the Plea Agreement. See (CR Doc. No. 91 at ¶¶ 3, 13, 14) (acknowledging that an attempt to withdraw the guilty plea will constitute breach of the Plea Agreement; voluntarily waiving "any right to withdraw the plea once the Magistrate Judge has accepted it;" acknowledging that the Plea Agreement and Factual Basis will be admissible in any civil or criminal proceeding if Petitioner attempts to withdraw the plea).

Moreover, Petitioner's contention that counsel should have filed a motion to suppress is too vague and conclusory to support relief. See United States v. Dyess, 730 F.3d 354, 362 (4th Cir. 2013) ("vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court."). Petitioner does not identify the evidence that counsel should have sought to suppress. In any event, it appears that any motion to suppress would have been meaningless in light of the admitted Factual Basis which he admitted, was true and

accurate and could be used for any purpose.

Moreover, Petitioner has failed to demonstrate prejudice. Petitioner conclusively states that there is a reasonable probability that he would have gone to trial had counsel performed effectively. However, in this § 2255 action, he only appears to seek a sentence reduction rather than withdrawing his guilty plea. The claim that his plea was involuntary is therefore facially deficient. Nor would it have been objectively reasonable for Petitioner to proceed to trial. The Plea Agreement was highly beneficial to Petitioner. In exchange for Petitioner's guilty plea to Counts Three and Four, the Government agreed to dismiss a serious conspiracy charge and he received a three-level reduction for acceptance of responsibility. [redacted] There was also strong evidence of Petitioner's guilt as set forth in the Factual Basis which, he admits, the Government could have proven beyond a reasonable doubt. (CR Doc. No. 163 at 18-19); see United States v. Santiago, 632 F. App'x 769, 774 (4th Cir. 2015) ("when the Government's case is strong," a § 2255 petitioner "faces a nearly insurmountable obstacle to showing that it would have been rational to go to trial."); see, e.g., United States v. Fugit, 703 F.3d 248, 259 (4th Cir. 2012) (finding that the decision to go to trial would not have been objectively reasonable where the evidence of petitioner's guilt was overwhelming).

The record reveals that Petitioner's guilty plea was knowing and voluntary and that no ineffective assistance of counsel occurred. Therefore, to the extent that the Petitioner argues that ineffective assistance of counsel rendered his guilty plea involuntary, this claim is denied.

Although there is a presumption, under the First Amendment, that materials filed in this Court will be filed unsealed, the Court may seal materials from public access if necessary. In the instant case, counsel for Petitioner submits that prison security matters have arisen.



The Clerk of Court will, therefore, be instructed to seal the unredacted Order, and to separately docket a redacted version of the Order, which will be made available to the public.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's § 2255 Motion to Vacate is denied, this Order will be filed under seal with a redacted version of the Order to be separately docketed and made available to the public, and the Federal Public Defender will be directed to provide counsel for the limited purpose described in this Order.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Amended Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 3), is **DENIED**.

2. The Clerk is instructed to docket this redacted Order on the public docket, and is further directed to file an unredacted version of this Order that will be permanently sealed.

3. The Federal Public Defender for the Western District of North Carolina shall provide counsel for the Petitioner in the criminal case, for the limited purpose of

3. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing

Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

The Clerk is respectfully directed to provide an unredacted copy of this Order to the Federal Public Defender for the Western District of North Carolina, counsel for the Government, and S. Frederick Winicker, III, and to close this case.

Signed: March 25, 2022

Max O. Cogburn Jr
United States District Judge